Andrew J. Levander (*pro hac vice admission to be sought*)
David A. Kotler (NJ 040701993)
Elizabeth C. Inglis (*pro hac vice admission to be sought*)
DECHERT LLP
902 Carnegie Center
Suite 500
Princeton, NJ 08540
Tel: (609) 955 3200
Fax: (609) 955 3259
andrew.levander@dechert.com
david.kotler@dechert.com
elizabeth.inglis@dechert.com
*Attorneys for Plaintiffs*

Jan A. Brody (NJ 029721976)
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994 1700
Fax: (973) 994 1744
JBrody@carellabyrne.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

EARL STANLEY CAUMMISAR, JR.,
KELLY MCBRYDE, WARREN COLEMAN
POWELL, ROGER GLASS, LBCW LIMITED
PARTNERSHIP, LBCW HOLDINGS L.P.,
ACREWOOD 2011, L.P., ERMINE
PARTNERS, LLC, and LINDA RIZK,
INDIVIDUALLY AND AS A TRUSTEE OF
THE ALEXANDRA TRUST AND THE
GEOFFREY TRUST,

        Plaintiffs,

   -against-

ARSENAL CAPITAL PARTNERS and
TRACTMANAGER HOLDINGS, LLC,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

:
:
:
:
:
:
:
:
:
:
:
:
:

Civ. A. No. ____

**COMPLAINT AND
JURY DEMAND**

## SUMMARY OF PLAINTIFFS' CLAIMS FOR SECURITIES FRAUD

1.      This action arises out of a fraudulent scheme devised, orchestrated and implemented by a private equity firm, defendant Arsenal Capital Partners ("Arsenal"). As detailed below, Arsenal duped Plaintiffs into effectively giving Arsenal more than $20 million, as well as control of a successful and growing business, through a series of misrepresentations and under false and fraudulent pretenses.

2.      At all relevant times, Plaintiffs have been passive investors in a privately-owned company known as TractManager, Inc. ("TractManager" or the "Company") through ownership in the Company's parent. Since its inception in 2000, TractManager, under the helm of its innovative founder and Chief Executive Officer, Thomas Rizk ("T. Rizk"), has successfully provided contract management software and services primarily to healthcare industry clients. John Douglas ("Douglas") -- the Company's Chief Information Officer since 2011 -- also played a critical role in the Company's growth and success, serving in a variety of key technology leadership positions since 2004.

3.      Plaintiffs, as long-time investors in TractManager, each invested significant capital into TractManager not only to help launch its business, but to support its growth and prosperity.

4.      As of late 2012, TractManager was enjoying meaningful success under the stewardship of T. Rizk and Douglas, with a valuation in excess of $150 million and revenues and profits on the rise. TractManager not only had grown exponentially on the domestic front, but also had expanded significantly into several international markets. But after more than ten years of success and growth, the Company needed to recapitalize in order to accomplish several important objectives. Additional capital was required to expand into international markets. A

financial sponsor also was required to bring additional resources and relationships to assist in the future growth of the Company's business.

5.      Thus, to further the development of the Company's expanding business, TractManager's investors, including Plaintiffs, sought the financial resources of a large outside investor who could make the Company's goals of expanding even further -- domestically and internationally -- a reality.  TractManager was primed and ready for an investment partner to bring its business (and the value of Plaintiffs' investments in the business) to even greater heights.

6.      TractManager's search for a new investor ultimately led it to Arsenal, a private equity firm that represented it would contribute more than $80 million of its own funds to recapitalize the Company while also agreeing to partner with the current management team headed by T. Rizk and Douglas.

7.      Economically, Arsenal conditioned its investment participation on two basic terms:  (a) Arsenal would acquire a majority ownership in the "new" TractManager (via its purchase of Class A Units of a newly-formed parent entity, TractManager Holdings, LLC ("TractManager Holdings")), and (b) Plaintiffs (and T. Rizk) would be required to keep substantial "skin in the game" by agreeing to re-invest tens of millions of their own dollars in the "new" TractManager by also purchasing Class A Units of TractManager Holdings.

8.      In return for allowing Arsenal to acquire majority control of TractManager and agreeing to a number of other governance terms demanded by Arsenal, Plaintiffs insisted on a number of promises from Arsenal, including three that form the basis for this lawsuit:  (a) that Arsenal itself (as opposed to an unaffiliated third party) both would provide the full amount of the more than $80 million in capital needed to acquire the majority interest in TractManager and

retain full ownership of its majority interest, (b) that the Board of TractManager Holdings, which would be overseeing TractManager, would include three independent directors (along with T. Rizk and three Arsenal designees) so as to ensure that Arsenal did not have unilateral control of the Board and that independent eyes were involved in the Company's decision-making and strategic processes, and (c) that Arsenal would retain and continue to employ the TractManager leadership team, headed by T. Rizk and Douglas, that had grown and led the company with great success.

9.      After several months of negotiation that included express representations from Arsenal on these critical deal terms, as well as the further inducement that Plaintiffs were expected to earn approximately $140 million as the return on their equity once the "new" TractManager followed its expected course of growth, Plaintiffs agreed to participate in the recapitalization of TractManager by purchasing more than $20 million of TractManager Holdings securities.

10.     All told, the economics of the transaction provided for Arsenal's purchase -- through two of its private equity investment funds (Arsenal Capital Partners III, LP and Arsenal Capital Partners III-B LP) -- of $84 million of TractManager Holdings securities, Plaintiffs' purchase of more than $20 million of TractManager Holdings securities, T. Rizk's purchase of approximately $5 million of TractManager Holdings securities, and debt financing of approximately $60 million.

11.     Unbeknownst to Plaintiffs, Arsenal, the sponsor of the TractManager Holdings' securities offering, made a number of material misrepresentations to Plaintiffs in connection with

their purchase of TractManager Holdings securities.  As set forth in more detail herein, three of

these misrepresentations form the primary basis for Plaintiffs' claims for securities fraud.[1]

12.     First, Arsenal misrepresented that it would be investing at least $84 million (and

as much as $87.5 million) of its own capital, which would represent just under 75% of the total

equity in the recapitalized TractManager Holdings.  In actuality, Arsenal had no intention of

investing anywhere near the full amount needed to obtain a majority ownership of TractManager

and TractManager Holdings.  To the contrary, Arsenal already had a secret deal in place to

offload $30 million of its TractManager Holdings securities to undisclosed third parties, a series

of Danish pension funds referred to herein as PKA.  At no time prior to Plaintiffs' purchase of

their TractManager Holdings securities (or indeed at any time since) did Arsenal disclose that it

intended to sell any part of its investment in TractManager Holdings, let alone that it already had

a deal in place to reduce its actual investment by $30 million.

13.     Second, Arsenal misrepresented that the Board of Directors of TractManager

Holdings would include three independent directors (in addition to three Arsenal representatives

and one representative on behalf of Plaintiffs).  To the contrary, again unbeknownst to Plaintiffs,

Arsenal never intended to operate TractManager Holdings under a duly constituted Board.

Instead, Arsenal intended to limit, and in fact has limited, the Board to only its three designees --

who, not surprisingly, are all principals of Arsenal.  With the independent Board members that

they promised to Plaintiffs out of the picture, Arsenal has used the lack of independence to

engage in a series of surreptitious maneuvers -- including negotiating secret credit and ownership

---

[1]     One other critical misrepresentation that Arsenal made was that it would continue to support and expand
TractManager's promising international business, which represented the largest growth potential for TractManager
and its investors (including Plaintiffs).  This misrepresentation is among the bases for the claims that are presently
being pursued in litigation pending in the New Jersey state courts.  *See Rizk v. Brown*, Docket No. PAS-C-40-13
(N.J. Super. Ct., Ch. Div.) and *SCG Limitless International GP Inc. v. TractManager, Inc.*, Docket No. PAS-C-41-
13 (N.J. Super. Ct., Ch. Div.).

agreements and technology transfers -- designed to extract all of TractManager's value for itself while leaving Plaintiffs' combined $20 million investments relatively worthless.

14.     Third, Arsenal misrepresented that it would keep in place the existing management team, headed by T. Rizk and Douglas, who built TractManager into a valuable business on the upswing for the benefit of TractManager's investors, including Plaintiffs.  It is now apparent that Arsenal never intended to allow T. Rizk, Douglas or much of the TractManager leadership team to work for TractManager.  Instead, Arsenal set out immediately after obtaining control of TractManager and receiving the benefit of Plaintiffs' $20 million investment in the Company to concoct a purported basis to oust T. Rizk, Douglas and many other key employees, which culminated on April 5, 2013 when Arsenal unceremoniously and without basis fired T. Rizk, Douglas and others.

15.     Regrettably, the truth of Arsenal's fraud was not revealed until after Plaintiffs had already re-invested their $20 million by purchasing TractManager Holdings securities and had allowed Arsenal to take control of TractManager based on Arsenal's promises.  Arsenal had misrepresented the amount of its investment in TractManager and its intention not to fully retain that investment.  Arsenal had misrepresented its intention not to properly constitute the TractManager Board.  Arsenal had misrepresented its intention not to retain key management personnel.  In sum, Arsenal, by means of these and other fraudulent misrepresentations, wrested control of TractManager without living up to its promises, duped Plaintiffs into investing more than $20 million of their own money into new TractManager, and now is seeking to misappropriate TractManager's value for its own gain.

16.     Plaintiffs bring these securities fraud claims to hold Arsenal fully accountable for its material misstatements and omissions in connection with Plaintiffs' purchase of their

securities in TractManager Holdings.  Defendants' actions constitute securities fraud under

Sections 10(b) and 20(a) of the Exchange Act and Securities Exchange Commission ("SEC")

Rule 10b-5 (17 C.F.R. §240.10b-5) as well as under Section 49:3-71 of the New Jersey Uniform

Securities Law.

## II.   <u>JURISDICTION AND VENUE</u>

17.    This Court has jurisdiction over the subject matter of this action pursuant to

Section 27 of the Exchange Act (15 U.S.C. § 78aa).  In addition, because this is a civil action

arising under the laws of the United States, this Court has jurisdiction pursuant to 28 U.S.C. §§

1331 and 1337.   The claims asserted herein arise under Sections 10(b) and 20(a) of the

Exchange Act and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5) promulgated thereunder.  The Court

has supplemental jurisdiction over the New Jersey Uniform Securities Law claims asserted

herein pursuant to 28 U.S.C. § 1367.

18.    Venue is proper in this District pursuant to Section 27 of the Exchange Act (15

U.S.C. § 78aa) and 28 U.S.C. §1391(b) and (c).  Many of the acts and transactions that give rise

to Plaintiffs' claims as alleged herein occurred in this District.

19.    In connection with the acts alleged in this Complaint, Defendants, directly or

indirectly, used the means and instrumentalities of interstate commerce, including, but not

limited to, the U.S. mail and interstate telephone communications.

## III.   <u>PARTIES</u>

### A.    **The Plaintiffs**

20.    Plaintiffs Earl Stanley Caummisar, Jr., Kelly McBryde, Warren Coleman Powell,

and Roger Glass (collectively the "Tennessee Investors"), all reside in Tennessee and Texas and

are long-time investors in TractManager.   Specifically, Earl Stanley Caummisar, Jr. resides at

2182 Kimbrough Woods Place, Germantown, Tennessee; Kelly McBryde resides at 2604 Arbor

Creek Way, Hixson, Tennessee; Warren Coleman Powell resides at 224 North Hermitage Avenue, Lookout Mountain, Tennessee; and Roger Glass resides at 1109 East Oak Street, Sanderson, Texas.  In connection with the Arsenal-controlled recapitalization of TractManager in December 2012, the Tennessee Investors purchased $6,501,705.48 in TractManager Holdings securities, which are reflected as 65,017.05 Class A Units.  The Tennessee Investors are passive members-investors of TractManager Holdings.

21.     Plaintiffs LBCW Limited Partnership, LBCW Holdings L.P. and Acrewood 2011, L.P. (collectively "Hamlin") maintain offices c/o Clay Hamlin, 40 Morris Avenue, Bryn Mawr, Pennsylvania, and are long-time investors in TractManager.  In connection with the Arsenal-controlled recapitalization of TractManager in December 2012, Hamlin purchased $2,846,623.35 in TractManager Holdings securities, which are reflected as 28,466.24 Class A Units.  Hamlin is a passive member-investor of TractManager Holdings.

22.     Plaintiff Ermine Partners, LLC ("Ermine"), is a New Jersey limited liability company located at 302 Waterview Drive, Franklin Lakes, New Jersey, and is a long-time investor in TractManager.  In connection with the Arsenal-controlled recapitalization of TractManager in December 2012, Ermine (exclusive of the interests of T. Rizk, who is not a plaintiff in this action) purchased $7,719,700.53 in TractManager Holdings securities, which are reflected as 77,196.99 Class A Units.  Ermine is a passive member-investor of TractManager Holdings.

23.     Plaintiff Linda Rizk ("L. Rizk") resides at 302 Waterview Drive, Franklin Lakes, New Jersey.  L. Rizk is a longtime investor in TractManager individually and as a trustee of trusts that also have invested in TractManager.  In connection with the Arsenal-controlled recapitalization of TractManager in December 2012, L. Rizk purchased $3,293,818.85 in

TractManager Holdings securities, which are reflected as 32,938.19 Class A Units.  Subsequent

to the transaction, L. Rizk gifted 10,000 Class A Units to each of two trusts: the Alexandra Trust

and the Geoffrey Trust (the "Trusts").  L. Rizk, individually and on behalf of the Trusts, is a

passive member-investor of TractManager Holdings.

      **B.**     **The Defendants**

      24.     Defendant Arsenal maintains offices at 100 Park Avenue, New York, New York

and 700 Alexander Park, Princeton, New Jersey.  According to its website

(www.arsenalcapital.com), Arsenal "is a progressive private equity firm that facilitates

transformational growth and change through a collaborative approach."

      25.     Defendant TractManager Holdings is a limited liability company that Arsenal

created on December 10, 2012 for purposes of its acquisition of a majority interest of

TractManager.  TractManager Holdings is a manager-managed LLC with its principal offices at

250 Pehle Avenue, Suite 410, Saddle Brook, New Jersey.  At the time of Plaintiffs' purchase of

securities that forms the basis for this Complaint, TractManager Holdings was wholly owned,

and exclusively controlled, by Arsenal.

**IV.**   **DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS
AND OMISSIONS**

      26.     Until Arsenal terminated his employment on April 5, 2013, T. Rizk had served as

the Company's Chief Executive Officer and had supervised all aspects of TractManager's

operations since the Company's founding in 2000.   In addition, until Arsenal terminated his

employment on April 5, 2013, Douglas not only had served as TractManager's Chief

Information Officer since 2011, but he also had worked for the Company since 2004 and was

responsible for co-designing and overseeing all stages of the development of the current

generation of TractManager's software as well as the re-engineering and re-developing of significant portions of its prior technology.

27.     Plaintiffs invested significant capital into the growth and development of TractManager under T. Rizk's and Douglas' leadership, and because of this investment and leadership, TractManager grew and prospered tremendously over the ensuing years.

28.     From the beginning of the negotiations with Arsenal that ultimately led to Plaintiffs' purchase of their TractManager Holdings securities, T. Rizk and other TractManager management made it abundantly clear to Arsenal that the Arsenal-led recapitalization would only be accepted by Plaintiffs, and Plaintiffs only would agree to invest their millions of dollars, if Arsenal agreed to certain key terms.  Those key terms included that Arsenal alone contribute and retain (either directly or through Arsenal affiliates) the $84 million investment in TractManager Holdings necessary to close the transaction and acquire majority ownership of TractManager, that Arsenal establish and operate under a duly constituted Board with the requisite number of independent members, and that Arsenal retain the pre-existing management and leadership team.

29.     As set forth above and herein, Defendants' false and misleading statements to Plaintiffs in connection with their purchase of TractManager Holdings securities included three key misrepresentations:  (a) the amount of Arsenal's equity contribution to the recapitalization of TractManager, (b) the composition of the TractManager Holdings Board, and (c) the retention of and partnership with T. Rizk, Douglas, and other key management.

**A.     Defendants' Materially False And Misleading Statements And Omissions Regarding Arsenal's Sole Funding Of Its Commitment And Its Intent To Hold The Controlling Ownership Interest In TractManager Holdings**

30.     Defendants repeatedly and specifically represented to Plaintiffs that as part of the transaction whereby Arsenal would obtain majority control over TractManager, Arsenal, either directly or through its funding affiliates, would fund its committed portion of the recapitalization

of TractManager.  Indeed, Plaintiffs would not have agreed to allow Arsenal to take control of TractManager if Arsenal did not agree to fund the entirety of its committed capital in TractManager.  Plaintiffs relied on the consistency and stability that Arsenal promised to provide as the sole outside investor.

31.     Defendants' materially false and misleading statements and omissions with respect to the amount of Arsenal's equity contribution were included in numerous communications made to or for the benefit of Plaintiffs in connection with their decision to purchase TractManager Holdings securities.

32.     To induce Plaintiffs to purchase TractManager Holdings securities, Arsenal approved the preparation and dissemination (by TractManager Holdings) of a Confidential Information Statement ("CIS") to TractManager's prior investors, including Plaintiffs.

33.     Prior to its dissemination to Plaintiffs, Arsenal and its counsel thoroughly reviewed the CIS in great detail and had authority over its content at the time of its dissemination.  On December 19, 2012, the CIS was sent by TractManager Holdings to Plaintiffs and other investors only after Arsenal had signed off on it.  The Agreement and Plan of Merger ("Merger Agreement") that was entered into in connection with Arsenal's acquisition of majority control of TractManager, which Defendants disseminated to Plaintiffs along with the CIS, further confirmed to Plaintiffs that Arsenal had reviewed and approved the CIS.

34.     The CIS includes detailed information regarding the structure of the transaction, and solicited investment in the new TractManager Holdings, which was represented to be wholly owned and controlled by Arsenal.

35.     The CIS states that Arsenal, alone, would fund Arsenal's full contribution amount in exchange for majority ownership of TractManager Holdings.  Specifically, the CIS represents:

(a) "Arsenal Capital Partners ("Arsenal" and with one of more of its affiliated funds, entities and/or investors, the "Arsenal Members") will contribute up to $87.5 million in cash to Parent in exchange for up to 77.8% of the Parent Class A Units." CIS at 4;

(b) "Cash provided by (i) Arsenal's contribution of up to $87.5 million in cash to Parent . . .  in exchange for Parent Class A Units." CIS at 13;

(c) "Following the Merger, Arsenal will beneficially own up to 77.8% of the Parent Class A Units of Parent and will have the right to designate three of the seven members with six of ten votes of the board of managers of Parent (the "Board"), giving it effective control over all decisions of the Board." CIS at 22;

(d) "After the Merger, Arsenal and related parties will own up to 77.8% of the voting interests of Parent. As a result, all of the material matters concerning Parent will for the foreseeable future be influenced by Arsenal and, to the limited extent set forth in the Operating Agreement, Thomas A. Rizk." CIS at 22; and

(e) "Cash provided by (i) Arsenal's contribution of up to $87.5 million in cash to Parent (the "Cash Equity") in exchange for Parent Class A Units  . . . ." CIS at 39.

36.     Arsenal further misrepresented its intent solely to fund the transaction in a

December 19, 2012 letter from its funding affiliate, Arsenal Capital Partners III, LP, to

TractManager Holdings (the "Equity Commitment Letter"), which states in relevant part:

(a) that the "Fund hereby agrees to acquire, directly or indirectly, equity securities of Parent for aggregate cash consideration of up to $87.5 million . . . ." Equity Commitment Letter at Sec. 1; and

(b) that the Fund may only "assign all or a portion of its obligations to fund the Commitment to one or more of its affiliated funds, entities and investment vehicles (including any investment vehicle that is managed by any Affiliate of the Fund); provided, however, that no such assignment shall relieve the Fund of its obligations under this letter agreement." Equity Commitment Letter at Sec. 4 (emphasis in original).

37.     Arsenal repeated its misrepresentation regarding its intent fully and solely to

invest the committed amount as set forth in the Equity Commitment Letter in the Merger

Agreement, which was annexed to the CIS that was delivered to Plaintiffs:

(a)     "Parent is acquiring through the Merger the shares of capital stock of the Surviving Corporation solely for its own account for investment purposes and not with a view to, or for offer or sale in connection with, any distribution thereof."  Merger Agreement, Sec. 6.04 (p. 51);

(b)     "Parent has delivered…an executed equity commitment letter…to provide the equity financing set forth therein in connection with the transactions contemplated by this Agreement . . . . As of the date hereof, none of the Commitment Letters has been amended or modified and no such amendment or modification is presently contemplated . . . . Except for a fee letter relating to fees with respect to the Debt Financing, there are no side letters or other agreements, contracts or arrangements related to the funding or investing, as applicable, of the Financing other than as expressly set forth in the Commitment Letters."  Merger Agreement, Sec. 6.06, (p. 52); and

(c)     "Parent shall use its commercially reasonable efforts to take...all actions, and do…all things, necessary, proper or advisable to obtain the Equity Financing on the terms and subject to the conditions set forth in the Equity Commitment Letter."  Merger Agreement, Sec. 7.13 (p. 60).

38.     Plaintiffs, when deciding to invest in TractManager Holdings, reasonably relied on the repeated assurances made by Defendants that Arsenal's purchase of more than $80 million of TractManager Holdings securities did not include any unaffiliated co-investors.  This was crucial to Plaintiffs' decision to allow Arsenal control of TractManager and to grant Arsenal significant management and governance rights as part of the transaction.  If Plaintiffs had known of Arsenal's undisclosed $30 million side deal with PKA, they would not have invested in TractManager Holdings as constituted.

39.     Indeed, as part of the recapitalization of TractManager, Arsenal, acting through TractManager Holdings, entered into a Credit Agreement with Madison Capital Funding LLC ("Madison Capital") for debt financing of $60 million.  The Credit Agreement created an "Event of Default" as to the loan if Arsenal ceased to own or control 51% of the voting equity interests or 55% of the cash equity investment in TractManager Holdings.  This provision therefore precluded Arsenal from selling a significant portion of its equity in TractManager Holdings to an

unaffiliated investor.  This material provision provided further assurance to Plaintiffs in their decision to invest in TractManager Holdings since it further required Arsenal to maintain a majority financial stake in return for it obtaining majority governance control over TractManager Holdings.

40.     The statements referenced in Paragraphs 35-37 and 39 were materially false and misleading when made because they misrepresented and/or omitted materially adverse facts which then existed and disclosure of which was necessary to make the statements not false and/or misleading.  Plaintiffs reasonably relied to their detriment on the foregoing statements in deciding to purchase TractManager Holdings securities.  Indeed, at the time Arsenal made each of the statements referenced in Paragraphs 35-37 and 39, Arsenal already had an undisclosed deal in place with PKA to offload $30 million of Arsenal's investment in TractManager Holdings.  Had Plaintiffs known that Arsenal already had this secret deal in place, Plaintiffs would not have invested their $20 million in TractManager Holdings securities.

41.     Arsenal not only failed to disclose its side deal with PKA at the time of Plaintiffs' purchase of TractManager Holdings securities, but it and PKA subsequently sought to cover their deceptive tracks.  As late as June 2013, PKA's website prominently displayed the $30M investment in TractManager as a "commitment" made in 2012.  Once the undisclosed Arsenal-PKA deal was raised in the pending New Jersey state court litigations, the PKA website was changed to remove this reference.

42.     In an effort to avoid defaulting under the Credit Agreement by virtue of its $30 million sale to PKA, Arsenal, by its control of TractManager Holdings, secretly and without proper authorization from the Board, amended the Credit Agreement with Madison Capital on March 7, 2013, by reducing to 45% the percentage equity interest in TractManager Holdings that

Arsenal was required to maintain without triggering an event of default under the Credit Agreement.

43.     Arsenal consummated its $30 million transaction with PKA, albeit surreptitiously and in violation of TractManager Holdings' LLC Agreement, on March 8, 2013.  Apart from constituting an improper transfer under TractManager Holdings' LLC Agreement, Arsenal also violated the LLC Agreement by purporting to grant a number of extraordinary rights (such as a Board observer) to PKA beyond those afforded to other investors, including Plaintiffs, in TractManager Holdings.

**B.     Defendants' Materially False And Misleading Statements And Omissions Regarding TractManager Holdings' Board Composition And Governance**

44.     In addition to the above material misstatements and omissions, Defendants also misrepresented their intent to comply with the material requirement set forth expressly in the TractManager Holdings LLC Agreement that the TractManager Holdings Board would include three independent board members.

45.     The CIS contains several misrepresentations of Arsenal's commitment to install these independent board members and thereby operate under the aegis of a duly constituted TractManager Holdings Board, including statements that:

> (a)     "The Board will be comprised of seven (7) individuals, with (a) three (3) representatives to be designated by Arsenal (the "Arsenal Representatives"), (b) one (1) representative to be designated by Thomas A. Rizk (the "Founder Representative"), (c) two (2) independent representatives to be designated by Arsenal and (d) one (1) independent representative to be designated by Thomas A. Rizk."  CIS at 5, 54; and

> (b)     "Thomas A. Rizk, the current Chief Executive Officer of TractManager, will have the right to designate one of the seven members with one of ten votes of the Board, Arsenal will have the right to designate two independent members with two of ten votes of the Board, and Thomas A. Rizk will have the right to designate one independent member with one of ten votes of the Board. Arsenal will have management control over Parent."  CIS at 22.

46.     In addition, the CIS sets forth the details regarding TractManager Holdings' Board -- including T. Rizk's active role on the Board and the appointment and active role of independent board members.

47.     Plaintiffs approved the transaction with Arsenal and agreed to allow Arsenal to obtain a majority stake in the Company based on Arsenal's promise to establish and operate under the management of a duly constituted Board with three independent members.  This promise by Arsenal turned out to be false as no independent oversight from the Board ever occurred.  Indeed, it is evident that Arsenal simply never intended to operate within the confines of a duly constituted Board.

48.     The statements referenced in Paragraphs 45 and 46 were materially false and misleading when made because they misrepresented and/or omitted materially adverse facts which then existed and disclosure of which was necessary to make the statements not false and/or misleading.  Plaintiffs reasonably relied to their detriment on the foregoing statements in deciding to purchase TractManager Holdings securities.  Had Plaintiffs known that Arsenal never intended to properly constitute the TractManager Board by keeping any and all independent directors off the Board, they would not have invested their $20 million in TractManager Holdings securities.

### C.     Defendants' Materially False And Misleading Statements And Omissions Regarding Retention Of Key Management Personnel

49.     In addition to the foregoing misrepresentations, Arsenal also misrepresented its intention to maintain TractManager's key management, including T. Rizk -- who "led the Company from a startup to a significant provider of contract management services."  CIS at 65.

50.     The CIS contained numerous misrepresentations regarding Arsenal's intent to retain the TractManager leadership and management team -- all of which turned out to be materially false and misleading:

(a)     "Arsenal intends to be a value-added partner to TractManager and to assist management in the realization of its vision and to open new growth avenues using its experience and deep relationships in the healthcare sector."  CIS at 10;

(b)     "Upon the consummation of the Merger, the directors of Merger Sub will be the initial directors of the surviving corporation and the officers of the Company will be the initial officers of the surviving corporation."  CIS at 13, 40; and

(c)     "A condition to the closing of the Merger is that each of the following officers of TractManager enters into an employment agreement with TractManager as of the Effective Time of the Merger: Thomas A. Rizk, George Brown and John Douglas."  CIS at 50.

51.     Arsenal's commitment to TractManager's leadership team was further evidenced through its promises to provide members of management with the opportunity to earn hundreds of millions of dollars based on the success of TractManager.

52.     The statements referenced in Paragraphs 50 and 51 were materially false and misleading when made because they misrepresented and/or omitted materially adverse facts which then existed and disclosure of which was necessary to make the statements not false and/or misleading.  Plaintiffs reasonably relied to their detriment on the foregoing statements in deciding to purchase TractManager Holdings securities.  Had Plaintiffs known that Arsenal never intended to retain T. Rizk, Douglas or other members of TractManager's management team, they would not have invested their $20 million in TractManager Holdings securities.

### D.    Defendants Consummate The Fraud

53.    Unbeknownst to Plaintiffs, Defendants induced Plaintiffs to purchase more than $20 million of TractManager Holdings securities with no intention of fulfilling their promises and representations.

54.    In order to mask the existence of its fraudulent scheme to (1) immediately sell a substantial portion of its committed equity amount to PKA, (2) pursue the PKA transaction and other improper actions without either establishing the Board as promised or obtaining necessary Board (and unitholder) approval, and (3) terminate key management, Arsenal acted secretly and through a series of pretexts and misrepresentations.

55.    Per TractManager Holdings' LLC Agreement and TractManager's Bylaws, their Boards of Managers and Directors were required to include three independent members, with T. Rizk appointing one independent member and Arsenal appointing two independent members. While T. Rizk did designate an independent member, Arsenal never appointed its required two independent members nor did it allow the independent member designated by T. Rizk ever to join the Board.  Thus, there were no independent members who could oppose Arsenal's self dealing, conflicted transactions, and other misconduct.

56.    Arsenal continued along with its true plan of engaging in clandestine day-to-day operations, without the participation of T. Rizk and Douglas, to negotiate secret credit agreements and ownership transfers, to oust management, to terminate two-thirds of TractManager's product development staff and all new product development personnel, to impair technological development and customer service capacities, and to terminate half the sales force -- all crippling TractManager's business and destroying the financial benefits that were promised to Plaintiffs.

57.     Freed of any independent Board oversight, on April 5, 2013, Arsenal abruptly terminated the employment of T. Rizk, Douglas, and numerous other key employees by concocting sham allegations of "cause."

58.     Indeed, far from growing TractManager's business as it repeatedly had represented to Plaintiffs in the offering materials, Arsenal even went so far as to implement a plan to usurp TractManager's trade secrets and technology and pass it along to a separate Arsenal-owned entity, WIRB-Copernicus Group ("WIRB-Copernicus"), despite express prohibition in TractManager Holdings' LLC Agreement against any "transaction, agreement, commitment, or arrangement" with Arsenal's subsidiaries or affiliates without T. Rizk's consent, which Arsenal never even sought.  Arsenal even arranged a presentation by TractManager's technological staff to executives at WIRB-Copernicus in which Arsenal permitted WIRB-Copernicus to record the presentation, which allowed WIRB-Copernicus to study TractManager's proprietary information.

59.     Unlike Arsenal, Plaintiffs have no ownership interest in WIRB-Copernicus. Because TractManager derives a significant amount of its value from its trade secrets and technology, Arsenal's actions vis-à-vis WIRB-Copernicus could paralyze TractManager and strip it of all meaningful value, thereby eviscerating any value to Plaintiffs from their $20 million investment in TractManager Holdings securities.

## V.     ADDITIONAL SCIENTER ALLEGATIONS

60.     As alleged herein, Arsenal and TractManager Holdings each acted with scienter in that they knew or recklessly disregarded that the statements made to Plaintiffs in the CIS and other representations were materially false and misleading and knew or recklessly disregarded that such statements or documents would be issued to Plaintiffs.

61.     Arsenal and TractManager Holdings also each acted with scienter in that they had the motive and opportunity to defraud Plaintiffs, including:

   (a)     by misrepresenting its intentions, Arsenal could acquire and maintain majority control of TractManager despite only having invested a minority amount;

   (b)     by eliminating independent board oversight and key management and their millions of dollars in management incentives, Arsenal could improperly merge technology and business that was proprietary to TractManager with its other properties and thereby profit at the direct expense of Plaintiffs; and

   (c)     by terminating key management such as T. Rizk and Douglas, Arsenal could acquire and maintain complete control of TractManager.

## VI.   LOSS CAUSATION

62.     In connection with the transaction, Defendants engaged in a course of conduct that misled Plaintiffs into believing that their significant investment in TractManager Holdings would grow, that they would enjoy consistency and stability that would come with having Arsenal as holder of a vast majority of TractManager Holdings securities, that they would have a duly constituted Board, and that the management team responsible for TractManager's growth and success would remain intact.

63.     By misrepresenting that Arsenal would be the sole investor for its $80+ million contribution, that independent board members would be appointed and that the TractManager leadership and management team would remain intact, Defendants presented a false and misleading picture of TractManager's post-transaction business and prospects.  These misrepresentations caused Plaintiffs to purchase more than $20 million in TractManager Holdings securities -- only for Defendants to then change the very nature of the company in which Plaintiffs thought they had invested: (1) by changing the promised level of Arsenal's investment and bringing in a new investor, PKA, which now holds a significant portion of

TractManager Holdings equity, (2) by failing ever to establish a duly constituted Board with independent members, and (3) by terminating key management personnel.

64.     Plaintiffs relied to their detriment on Defendants' materially false and misleading statements and documents in purchasing TractManager Holdings securities.  Had Plaintiffs known the truth of Defendants' scheme, they would not have purchased these securities.

65.     As alleged herein, Defendants' false statements directly or proximately caused, or were a substantial contributing cause of the damages and economic loss suffered by Plaintiffs.

## VII.   INAPPLICABILITY OF THE STATUTORY SAFE HARBOR

66.     The statutory safe harbor of the Private Securities Litigation Reform Act applicable to forward-looking statements under certain circumstances does not apply to any of the false and misleading statements pled in this Complaint.  None of the misstatements and omissions complained of herein was a forward-looking statement, nor was any of the statements identified as forward-looking when made.  Rather, the false or misleading statements and omissions complained of in this Complaint concerned omissions of historical and/or current facts and conditions existing at the time the statements were made.

67.     Alternatively, to the extent that any of the false or misleading statements alleged herein can be construed as forward-looking statements, they were not accompanied by any meaningful cautionary language identifying important facts that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Defendants provided only general disclosures that were not accurate in light of their undisclosed true intentions that they failed to disclose.  Further, to the extent the statutory safe harbor would otherwise apply to any forward-looking statements pled herein, Defendants are liable for those false or misleading forward-looking statements because at the time those statements were made, the speaker(s) knew

the statement was false or misleading (or they were authorized by someone who knew they were false/misleading).

## COUNT ONE
### Violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5
### Against Arsenal and TractManager Holdings

68.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

69.     TractManager Holdings Class A Units are securities because they are "investment contracts" under the federal securities laws.  Plaintiffs are passive member-investors in TractManager Holdings, and acquired Class A Units with an expectation of profit based solely on the efforts of others.

70.     As set forth herein, Defendants carried out a plan, scheme and course of conduct which was intended to and did (i) deceive Plaintiffs regarding TractManager Holdings' equity ownership structure, board composition and the composition of TractManager's management team; and (ii) cause Plaintiffs to purchase TractManager Holdings securities in reliance on Defendants' false and misleading misrepresentations and omissions.

71.      Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of TractManager Holdings securities as alleged herein.

72.     Defendants directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or mails, engaged and participated in a continuous course of conduct to disseminate false and misleading information to Plaintiffs regarding TractManager Holdings'

equity ownership structure, board composition, and the retention of key management personnel as alleged herein.

73.     Defendants employed devices, schemes and artifices to defraud, while in the possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to mislead Plaintiffs regarding TractManager Holdings' equity ownership structure, board composition, and the retention of key personnel, which included the making of untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about TractManager Holdings and its equity ownership, board composition and retention of key management personnel in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions and practices which operated as a fraud and deceit upon the purchasers of TractManager Holdings securities.

74.     Arsenal is liable for all materially false and misleading statements made in connection with Plaintiffs' purchase of TractManager Holdings securities as alleged above.

75.     TractManager Holdings is liable for the materially false and misleading statements in the CIS.

76.     The allegations above establish a strong inference that Defendants acted with scienter in that they had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and disclose such facts.  Such Defendants' material misrepresentations and/or omissions were done knowingly or with recklessness for the purpose and effect of concealing Arsenal's true plan for TractManager Holdings' equity ownership structure, board composition, and retention of key management personnel from Plaintiffs and inducing the significant investment in TractManager

Holdings securities by Plaintiffs.  In addition, as set forth herein, Defendants had the motive and opportunity to make the material misstatements and omissions set forth herein.

77.     As a result of the dissemination of the materially false and misleading information and omission of material facts, as set forth above, TractManager Holdings' equity ownership structure, board composition, and retention of key management personnel were misrepresented to Plaintiffs.  In ignorance of the foregoing material misrepresentations, and relying on the false and misleading statements made by Defendants, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in statements by them, Plaintiffs acquired TractManager Holdings securities based on false pretenses.

78.     At the time of these material misrepresentations and omissions, Plaintiffs were ignorant of their falsity.  Had Plaintiffs known the truth, they would not have purchased or otherwise acquired their TractManager Holdings securities under the terms that they were purchased.

79.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

80.     As a direct and proximate result of their wrongful conduct, Plaintiffs have suffered millions of dollars in damages in connection with their respective purchases of TractManager Holdings securities.

<div align="center">

**COUNT TWO**
**Violation of Section 20(a) of the Exchange Act**
**Against Arsenal**

</div>

81.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

82.     TractManager Holdings was created by Arsenal on December 10, 2012 with the sole purpose of acting as Arsenal's vehicle for the transaction.

83.     To any extent that Arsenal is deemed not responsible for the material misstatements and omissions as alleged herein, Arsenal acted as a controlling person of TractManager Holdings within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of its ownership and contractual rights, participation in and/or awareness of TractManager Holdings' operations and/or intimate knowledge of the false statements distributed by TractManager Holdings in the CIS, Arsenal had the power to influence and control and did influence and control, directly or indirectly, the decision-making of TractManager Holdings, including the content and dissemination of the various false and misleading statements.  Arsenal was provided with and or had full access to the drafts and copies of the CIS and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after the statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

84.     In particular, Arsenal had direct and supervisory involvement in the day-to-day operations of TractManager Holdings and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

85.     As set forth above, TractManager Holdings violated Section 10(b) and Rule 10b-5 by its acts and omissions as alleged in this Complaint.  By virtue of its position as controlling person, Arsenal is liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their purchase of TractManager Holdings' securities.

## COUNT THREE
### Violation of Section 29(b) of the Exchange Act
### Against TractManager Holdings

86.     Plaintiffs repeat and reallege each and every allegation contained above as if fully

set forth herein.

87.     The sale of TractManager Holdings securities to Plaintiffs was in violation of the

Exchange Act and the rules prescribed thereunder, including SEC Rule 10b-5.  Plaintiffs'

purchases of such securities occurred pursuant to materially false statements, omissions, and/or

schemes or practices that acted as a fraud upon Plaintiffs.

88.     There is contractual privity between Plaintiffs and TractManager Holdings

because each Plaintiff signed Unitholder Statements for the purchase of Class A Units.

89.     Plaintiffs are in the class of persons the Exchange Act was designed to protect.

90.     Accordingly, for the reasons set forth herein, the sale of Class A Units to

Plaintiffs must be rescinded and rendered void under Section 29(b) of the Exchange Act (15

USC § 78cc).

## COUNT FOUR
### Violation of the New Jersey Uniform Securities Law -- N.J.S.A. Section 49:3-47, et seq.
### Against Arsenal and TractManager Holdings

91.     Plaintiffs repeat and reallege each and every allegation contained above as if fully

set forth herein.

92.     TractManager Holdings Class A Units are securities because they are "investment

contracts" under N.J.S.A. Section 49:3-49(m).

93.     As set forth herein, Defendants carried out a plan, scheme and course of conduct

which was intended to and did (i) deceive Plaintiffs regarding TractManager Holdings' equity

ownership structure, board composition, and retention of key personnel; and (ii) cause Plaintiffs

to purchase TractManager Holdings securities in reliance on Defendants' false and misleading

misrepresentations and omissions.  Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of TractManager Holdings securities as alleged herein.

94.     Defendants employed devices, schemes and artifices to defraud, while in the possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to mislead Plaintiffs regarding TractManager Holdings' equity ownership structure, board composition, and retention of key personnel, which included the making of untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about TractManager Holdings and its equity ownership, board composition and retention of key management personnel in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions and practices which operated as a fraud and deceit upon the purchasers of TractManager Holdings securities.

95.     Arsenal is liable for all materially false and misleading statements made in connection with Plaintiffs' purchase of TractManager Holdings securities as alleged above.

96.     TractManager Holdings is liable for the materially false and misleading statements in the CIS.

97.     The allegations above establish a strong inference that Defendants acted with scienter in that they had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts.  Such Defendants' material misrepresentations and/or omissions were

done knowingly or with recklessness for the purpose and effect of concealing Arsenal's true plan for TractManager Holdings' equity ownership structure, board composition, and retention of key management personnel from Plaintiffs and inducing the significant investment in TractManager Holdings securities by Plaintiffs.  In addition, as set forth herein, Defendants had the motive and opportunity to make the material misstatements and omissions set forth herein.

98.     As a result of the dissemination of the materially false and misleading information and omission of material facts, as set forth above, TractManager Holdings' equity ownership structure, board composition, and retention of key personnel were misrepresented to Plaintiffs.

99.     At the time of these misrepresentations and omissions, Plaintiffs were ignorant of their falsity.  Had Plaintiffs known the truth, they would not have purchased or otherwise acquired their TractManager Holdings securities under the terms that they were purchased.

100.     By virtue of the foregoing, Defendants have violated Section 49:3-71 of the New Jersey Uniform Securities Law.

101.     As a direct and proximate result of their wrongful conduct, Plaintiffs have suffered millions of dollars in damages in connection with their respective purchases of TractManager Holdings securities.

## COUNT FIVE
### Violation of the New Jersey Uniform Securities Law -- N.J.S.A. Section 49:3-71(d) Against Arsenal

102.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

103.     TractManager Holdings was created by Arsenal on December 10, 2012 with the sole purpose of acting as Arsenal's vehicle for the transaction.

104.     Arsenal acted as a controlling person of TractManager Holdings within the meaning of Section 49:3-71(d) of the New Jersey Uniform Securities Law as alleged herein.  By

virtue of its ownership and contractual rights, participation in and/or awareness of TractManager Holdings' operations and/or intimate knowledge of the false statements distributed by TractManager Holdings in the CIS, Arsenal had the power to influence and control and did influence and control, directly or indirectly, the decision-making of TractManager Holdings, including the content and dissemination of the various false and misleading statements.  Arsenal was provided with and or had full access to the drafts and copies of the CIS and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after the statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

105.    In particular, Arsenal had direct and supervisory involvement in the day-to-day operations of TractManager Holdings and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

106.    As set forth above, TractManager Holdings violated Section 49:3-47, et seq. of the New Jersey Uniform Securities Law by its acts and omissions as alleged in this Complaint. By virtue of its positions as controlling person, Arsenal is liable pursuant to Section 49:3-71(d) of the New Jersey Uniform Securities Law.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their purchase of TractManager Holdings' securities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

A.    Awarding Plaintiffs compensatory and punitive damages.

B.    Rescinding Defendants' fraudulent sale of TractManager Holdings Class A Units to Plaintiffs.

C.    Such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated:  November 13, 2013
          Princeton, NJ

<div align="right">

<u>s/ David A. Kotler</u>
Andrew J. Levander (*pro hac vice admission to be sought*)
David A. Kotler (NJ 040701993)
Elizabeth C. Inglis (*pro hac vice admission to be sought*)
DECHERT LLP
902 Carnegie Center
Suite 500
Princeton, NJ 08540
Tel: (609) 955 3200
Fax: (609) 955 3259
andrew.levander@dechert.com
david.kotler@dechert.com
elizabeth.inglis@dechert.com

Jan A. Brody (NJ 029721976)
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994 1700
Fax: (973) 994 1744
JBrody@carellabyrne.com

*Attorneys for Plaintiffs*

</div>

## LOCAL RULE 11.2 CERTIFICATION

The undersigned certifies to the best of his knowledge that the instant action is not presently the subject of any other action pending in any court, arbitration or administrative hearing.  The plaintiffs and defendants herein are parties to a lawsuit with respect to other claims as between them encaptioned *Rizk v. Brown*, Docket No. PAS-C-40-13 (N.J. Super. Ct., Ch. Div.).  That lawsuit has been consolidated with a lawsuit encaptioned *SCG Limitless International GP Inc. v. TractManager, Inc.*, Docket No. PAS-C-41-13 (N.J. Super. Ct., Ch. Div.).

I hereby certify under penalty of perjury that the foregoing is true and correct.

Executed on Nov. 13, 2013

<div style="margin-left:40%">

s/ David A. Kotler_____
David A. Kotler (NJ 040701993)
DECHERT LLP
902 Carnegie Center
Suite 500
Princeton, NJ 08540
Tel: (609) 955 3200
Fax: (609) 955 3259
david.kotler@dechert.com

*Attorneys for Plaintiffs*

</div>